UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KIRK WAYNE LABADIE,

Plaintiff,

Case No. 2:14-cv-23

v.

Honorable Robert Holmes Bell

DOUGLAS MITCHELL, et al.,

Defendants.
______________________________/

# **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants District Attorney Brian Peppler and Chippewa County. The Court will serve the complaint against Defendants Sheriff Douglas Mitchell and Deputies Justin Fruchey, Amber Wagner, Frank Pingatore, and Matthew Touri.

**Discussion**

  I.  Factual allegations

  Plaintiff Kirk Wayne Labadie, a state prisoner currently confined at the Bellamy Creek Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Sheriff Douglas Mitchell, District Attorney Brian Peppler, Chippewa County, and Deputies Justin Fruchey, Amber Wagner, Frank Pingatore, and Matthew Touri. Plaintiff alleges that on August 19, 2012, another prisoner, Kenneth Kammerse, began yelling and throwing things from his cell, as well as flooding his cell with toilet water. Plaintiff saw the toilet water flowing past his cell and called out to Kammerse to try and calm him down. Approximately five minutes later, Defendant Mitchell walked toward Plaintiff's cell and asked, "Who the fuck are you?" Plaintiff responded by stating, "Who the fuck are you?" Defendant Mitchell again told Plaintiff to shut up, adding that he could not hear himself think. Plaintiff responded by stating, "You can shut your fucking mouth . . . who the fuck are you anyways to even speak to me the way you are?" Defendant Mitchell ordered Plaintiff to be quiet and sit down, but Plaintiff refused. Defendant Mitchell then placed his chin on the bars to Plaintiff's cell and spat at Plaintiff. Defendant Mitchell again told Plaintiff to "shut the fuck up and to sit down." Plaintiff refused and Defendant Mitchell pulled out his mace and sprayed Plaintiff in the face.

  Plaintiff instantly felt burning in his eyes and could not breathe. As he tried to clear the mace from his eyes, Defendant Mitchell started laughing at him and asked how he liked being maced. Plaintiff then threw 3 to 5 gallons of water that had been used to wash clothes on Defendant Mitchell and asked him how he liked it. Defendant Mitchell then attempted to mace Plaintiff again, but Plaintiff was able to reach outside the bars and grabbed Defendant Mitchell by his shirt to stop

him from spraying the mace. Defendant Mitchell pulled free and sprayed Plaintiff with the mace, although Plaintiff was still able to throw luke-warm coffee on Defendant Mitchell. During the entire incident, Defendants Fruchey, Pingatore, and Touri stood by and did nothing to protect Plaintiff from being maced.

Defendant Mitchell then left the area for approximately five minutes. When Defendant Mitchell returned, he told Plaintiff to place his hands on the wall. Plaintiff responded by telling Defendant Mitchell to "fuck off." At this point, Plaintiff heard a popping sound and saw a light. Plaintiff turned to his left and felt himself "being electrocuted." Plaintiff leaned against the wall and attempted to straighten his ankle as it rolled over. Defendant Mitchell asked Plaintiff how he liked that and whether Plaintiff "was done." Plaintiff said "yes" so that Defendant Mitchell would not taze him again. Defendant Mitchell told Plaintiff to get up, and when Plaintiff attempted to obey, Defendant Mitchell tazed him again. Plaintiff yelled, "I told you I was done."

Defendant Mitchell told Plaintiff to get up and get in the chair. Plaintiff complied and was tied to the chair in four point restraints. Plaintiff was then wheeled to an observation cell, where he remained for approximately one to two hours. Plaintiff was subsequently taken back to his cell as if nothing had happened. Plaintiff was not allowed to pursue charges against Defendant Mitchell. Instead, Defendant Peppler filed charges against Plaintiff based on this incident. Over a year later, on August 27, 2013, the prosecutor's office dismissed the charges against Plaintiff without prejudice. Plaintiff asserts that Defendants' conduct violated his Eighth Amendment rights and seeks compensatory and punitive damages.

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff asserts that Defendant Peppler violated his constitutional rights by filing criminal charges against Plaintiff. However, Defendant Peppler is entitled to absolute immunity for his actions in bringing criminal charges against Plaintiff. The Supreme Court embraces a functional approach to determining whether a prosecutor is entitled to absolute immunity. *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997); *Burns v. Reed*, 500 U.S. 478, 486 (1991); *Forrester v. White*, 484 U.S. 219, 229 (1988); *accord Koubriti v. Convertino*, 593 F.3d 459, 467 (6th Cir. 2010); *Lomaz v. Hennosy*, 151 F.3d 493, 497 (6th Cir. 1998). Under a functional analysis, a prosecutor is absolutely immune when performing the traditional functions of an advocate. *Kalina*, 522 U.S. at 130; *Spurlock v. Thompson*, 330 F.3d 791, 797 (6th Cir. 2003); *Grant v. Hollenbach*, 870 F.2d 1135, 1137 (6th Cir. 1989). The Supreme Court has held that a prosecutor is absolutely immune for the initiation and pursuit of a criminal prosecution. *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976); *Lomaz*, 151 F.3d at 497. Acts which occur in the course of the prosecutor's role as advocate are entitled to protection of absolute immunity, in contrast to investigatory or administrative functions that are normally performed by a detective or police officer. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273, 276-78 (1993); *Grant*, 870 F.2d at 1137. In the Sixth Circuit, the focus of the inquiry is how closely related the prosecutor's conduct is to his role as an advocate intimately associated with the judicial phase of the criminal process. *Spurlock*, 330 F.3d at 797; *Ireland v. Tunis*, 113 F.3d 1435, 1443 (6th Cir. 1997). Obviously, filing criminal charges is part of the prosecutor's role as an advocate. Accordingly, Defendant Peppler is entitled to immunity.

Plaintiff also names Chippewa County as a defendant in this case and makes a conclusory assertion that the county "cannot condone their employees' malicious actions." A municipality may only be liable under § 1983 when its policy or custom causes the injury, regardless of the form of relief sought by the plaintiff. *Los Angeles Cnty. v. Humphries*, 131 S. Ct. 447, 453-54 (2010) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1974)). In a municipal liability claim, the finding of a policy or custom is the initial determination to be made. *Doe v. Claiborne Cnty.*, 103 F.3d 495, 509 (6th Cir. 1996). The policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the governmental entity and show that the particular injury was incurred because of the execution of that policy. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire v. Irving,* 330 F.3d 802, 815 (6th Cir. 2003); *Doe*, 103 F.3d at 508-509. It is the court's task to identify the officials or governmental bodies which speak with final policymaking authority for the local government in a particular area or on a particular issue. *McMillian v. Monroe County*, 520 U.S. 781, 784-85 (1997).

Where a plaintiff fails to allege that a policy or custom existed, dismissal of the claim for failure to state a claim is appropriate. *Rayford v. City of Toledo*, No. 86-3260, 1987 WL 36283, at *1 (6th Cir. Feb. 2, 1987); *see also Bilder v. City of Akron*, No. 92-4310, 1993 WL 394595, at *2 (6th Cir. Oct. 6, 1993) (affirming dismissal of § 1983 action when plaintiff allegation of policy or custom was conclusory, and plaintiff failed to allege facts tending to support the allegation). In this case, Plaintiff fails to allege the existence of a policy or custom which resulted in the improper use of force against him. Therefore, the court will dismiss Plaintiff's claims against Defendant Chippewa County because he has failed to state a claim upon which relief may be granted.

Finally, the court notes that Plaintiff's claims against the remaining Defendants are not clearly frivolous and may not be dismissed on initial review. Therefore, the court will serve Plaintiff's complaint against those Defendants.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Peppler and Chippewa County will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendants Mitchell, Fruchey, Wagner, Pingatore and Touri.

An Order consistent with this Opinion will be entered.


Dated: August 19, 2014 /s/ Robert Holmes Bell
ROBERT HOLMES BELL
UNITED STATES DISTRICT JUDGE